IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-541-D

RANDY DINGLE,                )
                             )
            Plaintiff,       )
                             )
    v.                       )     **ORDER**
                             )
JUDGE AMANDA L. MARIS, et al.,)
                             )
            Defendants.      )

On October 9, 2020, Randy Dingle ("Dingle" or "plaintiff"), proceeding pro se, filed a complaint against a Durham County District Judge (Maris) and staff member (Flemmings); three attorneys (Dennis, Edwards, and Peterkin); the Durham County Sheriff (Birkhead) and two of his civil division officers (Whitaker and Fosters); and two of Dingle's family members (his ex-wife Patricia Dingle and their daughter Natashia Dingle). See Compl. [D.E. 1]. Seven of these defendants move to dismiss the complaint [D.E. 9, 16, 19, 30]. The court notified Dingle about the motions to dismiss and the consequences of failing to respond [D.E. 11, 18, 23, 33]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). Dingle responded in opposition to defendants' motions [D.E. 28, 38] and seeks "clarification" of a court order, which the clerk filed as a motion [D.E. 40]. Edwards and Peterkin move for sanctions [D.E. 21, 26]. As explained below, the court grants defendants' motions to dismiss and denies the remaining motions.

I.

Dingle's complaint concerns his divorce from defendant Patricia Dingle and their bankruptcy case, and problems that he has had with the civil division of the Durham County Sheriff's Department. See Compl. at 4–6. Due to the bankruptcy proceedings, Dingle's lost his home and

"[m]oney that was in my house[,]" a retirement savings account, an inheritance, and unspecified property. Id. at 6. Dingle alleges that unspecified defendants filed "fraudulent documents" in the bankruptcy proceedings, committed "[f]orgery and using my name and social security number[,]" defamed his character, and "[c]onceal[ed] . . . evidence of fraud" concerning his children, Patricia Dingle and her sister. Id. at 6–7.

Defendant Maris "was the judge during an absolute divorce hearing" in which Dingle "was contesting the divorce, so that [he] could recoup . . . property that was stolen by [Patricia] Dingle and the children." Id. at 4. Dingle alleges that Maris "was playing the judge, attorney, and the jury from the bench . . . . [and] failed to do her fiduciary duty as an administrator and not a Judge." Id. Dingle also alleges that Maris "knowingly and willfully showed bias and prejudice" against him by denying Dingle's request to speak on his own behalf, and issuing "a seal divo[r]ce decree with someone else's name" and an unclear signature, which "can not be a legal and binding document or contract." Id.

Dingle alleges that defendant Flemmings, the family court coordinator, "violated her code of ethics and her oath also, by receiving and filing fraudulent documents that she received from attorney India Dennis." Id. at 5. When Dingle "went to the Family Court to have my documents of contestment be added to the [court case] file[,]" Flemmings "[a]t first . . . did not want to take my documents, she was too busy trying to inform me about her personal life." Id.

Defendant Dennis represented Patricia Dingle in the divorce proceedings. See id. at 4–5. According to Dingle, Dennis advised Patricia Dingle to seek an absolute divorce and presented false documents to the family court and relied on hearsay during the hearing. See id. at 4. Dingle alleges that Dennis "is a part of a secret society of arcane, by guaranteeing the keeping of ordinary people

2

in political, economic and spiritual bon[d]age." Id. at 4–5.

"During the absolute divorce Patricia Dingle brought up our bankruptcy case. She was the one who initiated the bankruptcy with the help of" defendants Edwards and Peterkin. Id. at 6. Defendant "Natashia Dingle even made an appearance in the Family court with her mama (Mrs. Dingle)." Id. at 5.

Dingle also describes problems with the civil division of the Durham County Sheriff's Department. Defendant "Sheriff Clarence Birkhead is the CEO . . . for The Durham County Sheriff Department. He is responsible for his office, officers, and all other departments in his section." Id. at 6. Dingle alleges that on an unspecified date, he "went to the Durham County Sheriff Department Civil Division to have them serve some summons for a case . . . in the United States Federal Courts in Raleigh." Id. at 5. Dingle presented the sealed envelopes with the complaints and summonses to a cashier, who "open[ed] them . . . against the privacy act." Id.

Defendant Fosters "was the deputy doing the services of my summons." Id. Fosters was able to serve two people (Patricia Dingle and her sister), but "wrote and said he could not find Natashia Dingle, (who lives with her mother, Patricia Ellen Watson Dingle) or" two of Dingle's other children, even though "Patricia Ellen Watson Dingle, their mother knew their whereabouts." Id. at 5–6. Fosters "later sent back the summons, but not my Federal Complaint Packets for Natashia Dingle, Alonzo Dingle, and Danica Dingle[.]" Id. at 6.

Dingle contends that because the cashier opened his sealed service packets, "all my federal documents (complaint) were opened by the cashier and read by the Judge, Dennis, Sheriff Birkland, Whitaker, and Fosters and other individuals in the Durham County Sheriff Department[]" in "a violation of their fiduciary duties and their oath to uphold The Constitution of the United States of

3

America and the North Carolina Constitution, his ethics, code of conduct, morals, and principles." Id. at 5–6. Dingle believes that Birkhead "decided to help Patricia Dingle (which is not her lawfully name) in her divorce, based on reading the Federal complaint and summon packet, which shows all the other sheriffs that are involved. All of the sheriffs in North Carolina are in a fraternity order which falls under the title of 'The Good Old Boys System'." Id. at 6.

Dingle "contacted [defendant] Capt. Whitaker by phone and informed him of how unprofessional the cashiers were. Whitaker even offered to refund my funds due to the mistakes of the cashier in his department." Id. at 5. Dingle "later made a complaint to the Durham County Sheriff Department, which included Captain Whitaker's name. As of this day it has yet to be answered." Id. at 5–6. However, Fosters called Dingle after Dingle filed the complaint and said "(and I quote) 'you better stop what you are doing.[']" Id. at 6.

Dingle asserts claims under 42 U.S.C. §§ 1983, 1985, and 1986, and various federal criminal statutes. See id. at 3–4, 7; [D.E. 14]. Dingle seeks "[t]wenty million dollars per occurrence, per office, official, agent or representative." Compl. at 2.

## II.

### A.

On February 12, 2021, the court granted Maris and Flemmings's motion to deem their motion to dismiss timely filed. See [D.E. 32, 39]. Dingle "would like to have more clarification of" that order, which the clerk filed as a motion. See [D.E. 40].

"When an act may or must be done within a specified time, the court may, for good cause, extend the time." Fed. R. Civ. P. 6(b)(1). In analyzing a motion for extension of time to answer or otherwise respond to a complaint, the court considers such factors as prejudice to the plaintiff, the

length of the proposed delay, "its potential impact on judicial proceedings, the reason for the delay, and whether the movant had acted in good faith." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993).

Defendants did not act in bad faith, and their slight delay in filing a motion to dismiss did not not prejudice Dingle. Notably, Dingle sought and obtained an extension of time to respond to defendants' motions. See [D.E. 24, 25]. Thus, to the extent Dingle seeks reconsideration of the order, the court denies the motion as meritless.

B.[1]

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). A federal court "must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." Constantine, 411 F.3d at 479–80. "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co., 523 U.S. at 104; see Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

---

[1] The court declines to address the argument of three defendants that Dingle failed to effect service on three defendants. See [D.E. 17] 2–3; [D.E. 31] 4–5; cf. Washington v. Cline, 233 N.C. App. 412, 420, 761 S.E.2d 650, 655 (2014).

5

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [the] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"[W]hen a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995); see Chandler v. Forsyth Tech. Cmty. Coll., 294 F. Supp. 3d 445, 448 n.1 (M.D.N.C.), aff'd, 739 F. App'x 203 (4th Cir. 2018) (per curiam) (unpublished). Dingle does not identify any official policy or custom governing any defendant's actions, "bring[s] this complaint on ... individuals[,]" alleges that "[t]he color of [l]aw was ... broken[,]" and seeks monetary damages. Compl. at 2–4. Thus, the court construes Dingle's complaint as alleging claims against defendants in their individual capacities. See, e.g., Morris v. Taylor, No. CV CCB-20-342, 2021 WL 37661, at *2 (D. Md. Jan.

5, 2021) (unpublished); Hudson v. Smith, No. 3:19-cv-1499-SAL, 2020 WL 6707609, at *3 (D.S.C. Nov. 16, 2020) (unpublished); Combs v. Ashe Cnty., No. 5:14-CV-136, 2016 WL 3625551, at *8 (W.D.N.C. July 6, 2016) (unpublished).

To the extent Dingle cites violations of federal criminal statutes, "the United States and its attorneys have the sole power to prosecute criminal cases in the federal courts," and private citizens cannot petition federal courts to compel the criminal prosecution of another person. Maine v. Taylor, 477 U.S. 131, 136–37 (1986); see Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973). Moreover, sections 241 and 242 of Title 18 of the United States Code "provide no basis for civil liability." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam); see Huston v. Slanina, No. 12 C 4582, 2012 WL 4464301, at *2 (N.D. Ill. Sept. 24, 2012) (unpublished) (collecting cases). Accordingly, any claim under these statutes fails.

To the extent Dinkle alleges a conspiracy claim under 42 U.S.C. § 1985, to state a claim, Dinkle must plausibly allege "that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiff's] deprivation of a constitutional right." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). To show joint, concerted action, Dinkle must, at minimum, provide "specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." Id. Conclusory allegations of a conspiracy do not satisfy this "meeting of the minds" element and therefore fail to state a claim. See, e.g., Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995); Gooden v. Howard Cnty., 954 F.2d 960, 970 (4th Cir. 1992) (en banc). Dinkle fails plausibly to allege a "meeting of the minds" between any of the named defendants or any shared objective of violating his constitutional rights. Cf. Iqbal, 556 U.S. at 677–84; Hankins v. Brunswick Cnty., No. 7:20-CV-16-D, 2020 WL 7390483, at *3 (E.D.N.C. Oct. 27, 2020) (unpublished), report and

7

recommendation adopted, 2020 WL 7388434 (E.D.N.C. Dec. 16, 2020) (unpublished); Johnson v. City of Fayetteville, 91 F. Supp. 3d 775, 796–98 (E.D.N.C. 2015). Thus, Dinkle fails to state a claim under section 1985. Furthermore, because Dinkle's section 1985 claims fail, his section 1986 claims also fail. See Trerice v. Summons, 755 F.2d 1081, 1085 (4th Cir. 1985) ("A cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985."); Hankins, 2020 WL 7390483, at *3; Davis v. Hudgins, 896 F. Supp. 561, 571 (E.D. Va. 1995), aff'd, 87 F.3d 1308 (4th Cir. 1996).

"To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Additionally, a section 1983 plaintiff must allege the personal involvement of a defendant. See, e.g., Iqbal, 556 U.S. at 676–77; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–94 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

Dingle alleges that defendant Flemmings "receiv[ed] and fil[ed] fraudulent documents" in his divorce case and did not accept Dingle's "documents of contestment" for filing until after having an unprofessional personal conversation with Dingle. Compl. at 5. Dingle alleges that defendant Fosters served two defendants (Dingle's former wife and her sister) in a different federal civil action in a "totally different . . . manner" from each other and failed to serve three other defendants (Dingle's three children), "saying that they could not be located." Id. at 5–6. The court construes Dingle's section 1983 claims against these defendants as asserting a denial of access to the courts and due process. See Gray v. Shedd, 559 F. App'x 621, 621 (9th Cir. 2014) (unpublished); Bullock v. Doe, 153 F. App'x 869, 870 (3d Cir. 2005) (per curiam) (unpublished); Jones v. Union Cnty., 296

8

F.3d 417, 425–26 (6th Cir. 2002); Carter v. McCarter, 915 F.2d 1570, 1990 WL 151123, at *1 (6th Cir. 1990) (unpublished table decision); Khrapko v. Splain, 389 F. Supp. 3d 199, 204 (W.D.N.Y. 2019); Lee X v. Casey, 771 F. Supp. 725, 732 (E.D. Va. 1991). To state a claim for denial of access to the courts, Dingle must show actual injury or that the defendants' conduct hindered his efforts to pursue a legal claim. See, e.g., Lewis v. Casey, 518 U.S. 343, 351–57 (1996); Michau v. Charleston Cnty., 434 F.3d 725, 728 (4th Cir. 2006); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc). Moreover, the Constitution does not guarantee Dingle the ability to litigate effectively once in court. See Lewis, 518 U.S. at 354–55. "To state a claim for violation of a [procedural] Due Process right, a plaintiff must initially demonstrate conduct which rises to the level of a constitutional 'deprivation'." Lee X, 771 F. Supp. at 732 (citing Daniels v. Williams, 474 U.S. 327 (1986)); see Khrapko, 389 F. Supp. 3d at 204. A substantive due process claim requires action "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Hawkins v. Freeman, 195 F.3d 732, 738 (4th Cir. 1999) (en banc) (quotation omitted); see Khrapko, 389 F. Supp. 3d at 204.

Dingle's allegation that Fosters failed to effect service of process "in another otherwise unrelated action . . . . asserts the infringement of a nonexistent legal interest." Carter, 1990 WL 151123, at *1; see Gray, 559 F. App'x at 621; Jones, 296 F.3d at 425–26; Moore v. Aycock, 71 F.3d 875, 1995 WL 725388, at *1 (5th Cir. 1995) (per curiam) (unpublished table decision); cf. Evans v. Funderburk, No. CV 4:11-3232-RBH-BM, 2012 WL 571571, at *2 (D.S.C. Jan. 4, 2012) (unpublished), report and recommendation adopted, 2012 WL 571075 (D.S.C. Feb. 22, 2012) (unpublished). Dingle has failed to state either a procedural or a substantive due process claim where he "has alleged nothing more than that defendants took certain actions, or failed to do certain things, that discomfited him or adversely affected him" and "has done little more than repackage

everything that he found objectionable in the state court[.]" Khrapko, 389 F. Supp. 3d at 204. Dingle has failed to plausibly allege any injury resulting from either Fosters's or Flemmings's conduct. See Minnick v. Lane, 570 F. App'x 416, 417 (5th Cir. 2014) (per curiam) (unpublished); Gray, 559 F. App'x at 621; Bullock, 153 F. App'x at 871; Catanzaro v. Davis, 686 F. App'x 91, 94 n.1 (3d Cir. 2017) (per curiam) (unpublished); Evans, 2012 WL 571571, at *2. Moreover, Dingle has alleged that these defendants acted — at most — negligently, which is generally not actionable under section 1983. See, e.g., Daniels, 474 U.S. at 330–31; Pink v. Lester, 52 F.3d 73, 77–78 (4th Cir. 1995); Snyder v. Blankenship, 473 F. Supp. 1208, 1212–13 (W.D. Va. 1979), aff'd, 618 F.2d 104 (4th Cir. 1980) (unpublished table decision); cf. Williams v. Williams, 113 N.C. App. 226, 230, 437 S.E.2d 884, 887 (1994), aff'd, 339 N.C. 608, 453 S.E.2d 165 (1995).

As for Sheriff Birkhead and Captain Whitaker, Dingle names these defendants on a theory of supervisory liability. See Compl. at 5–6. The doctrine of respondeat superior does not generally apply to a section 1983 action. See, e.g., Iqbal, 556 U.S. at 677; Monell, 436 U.S. at 694; Carter v. Morris, 164 F.3d 215, 220–21 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798–99 (4th Cir. 1994). Instead, where a defendant is sued on the basis of supervisory liability, "[a] plaintiff must show actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Carter, 164 F.3d at 222 (quotations omitted); see Shaw, 13 F.3d at 799. Dingle has not alleged facts sufficient to state a claim based on supervisory liability. See, e.g., Wierzbic v. Cnty. of Erie, No. 13-CV-978S, 2018 WL 550521, at *5 (W.D.N.Y. Jan. 25, 2018) (unpublished). Thus, the court grants these defendants' motion to dismiss.

Additionally, Dingle has named several defendants who are immune from or not amenable to suit. State court judges are entitled to judicial immunity for actions taken as a judicial officer,

10

including acts that are alleged to have been done maliciously or corruptly. See, e.g., Pierson v. Ray, 386 U.S. 547, 553–54 (1967); Stump v. Sparkman, 435 U.S. 349, 355–57 (1978); King v. Myers, 973 F.2d 354, 356–57 (4th Cir. 1992). Dingle has not plausibly alleged facts sufficient to show that Judge Maris acted in clear absence of all jurisdiction. See, e.g., Campbell v. Bennett, No. CV 0:19-973-JFA-PJG, 2019 WL 4593567, at *3 (D.S.C. Sept. 23, 2019) (unpublished), aff'd, 801 F. App'x 144 (4th Cir. 2020) (per curiam) (unpublished); Daniels v. Grady, No. 17 CV 6775, 2018 WL 1586243, at *4 (N.D. Ill. Apr. 2, 2018) (unpublished). Accordingly, judicial immunity bars Dingle's claims against Judge Maris.

As for attorneys Edwards and Peterkin, private attorneys who participate in judicial proceedings do not act under color of state law. See, e.g., Pappas v. Lorintz, 832 F. App'x 8, 13 (2d Cir. 2020) (unpublished); Catanzaro, 686 F. App'x at 94; Yeh Ho v. Sabocik, 775 F. App'x 551, 554 (11th Cir. 2019) (per curiam) (unpublished); Anderson v. Anderson, 554 F. App'x 529, 531 (7th Cir. 2014) (unpublished). Thus, Dingle's section 1983 action against these defendants fails.

C.

Three defendants — Dingle's daughter Natashia Dingle, his former wife Patricia Dingle, and attorney India Dennis — have not answered the complaint or filed any motion to dismiss. See Pl. Aff. [D.E. 35]. However, "frivolous complaints are subject to dismissal pursuant to the inherent authority of the court, even when the filing fee has been paid." Ross v. Baron, 493 F. App'x 405, 406 (4th Cir. 2012) (per curiam) (unpublished) (citing Mallard v. U.S. Dist. Ct., 490 U.S. 296, 307–08 (1989)). Dingle's claims against attorney Dennis fail for the reasons already discussed. Likewise, Dingle has not plausibly alleged that his daughter and former wife acted under color of state law. See, e.g., Pappas, 832 F. App'x at 13; Anderson, 554 F. App'x at 531. Thus, the court dismisses the action.

11

D.

Defendants Edwards and Peterkin move for sanctions against Dingle, including a prefiling injunction, under 28 U.S.C. § 1651(a) and Federal Rule of Civil Procedure 11 [D.E. 21, 26]. The court has considered the motions under Cromer v. Kraft Foods N. Am., Inc., 390 F.3d 812, 817–20 (4th Cir. 2004). A court must approach issuing a prefiling injunction against a pro se plaintiff "with particular caution." Id. at 818 (quotation omitted). In light of the entire record, the court declines to issue a prefiling injunction. The court warns Dingle, however, that future unsuccessful lawsuits filed in this district may result in sanctions, including monetary sanctions, dismissal, and a prefiling injunction. See Hathcock v. Navistar Int'l Transp. Corp., 53 F.3d 36, 40–41 (4th Cir. 1995).

III.

In sum, the court GRANTS the motions to dismiss [D.E. 9, 16, 19, 30] and DISMISSES the action for failure to state a claim. The court DENIES the motions for sanctions [D.E. 21, 26] and the motion to clarify [D.E. 40]. The clerk shall close the case.

SO ORDERED. This __7__ day of June 2021.

JAMES C. DEVER III
United States District Judge